```
                UNITED STATES DISTRICT COURT
                   DISTRICT OF NEW JERSEY
                  Civil Action No. 08-2946    RECEIVED

                                                MAY - 7 2009

In Regard to the Matter of:                   JOEL SCHNEIDER
                                           U.S. Magistrate Judge
Bayside State Prison              OPINION/REPORT
Litigation                            OF THE
                                   SPECIAL MASTER
MICHAEL SHONTZ

         -vs-

WILLIAM H. FAUVER, et al,

         Defendants.
```

                    *     *     *     *

            **TUESDAY, APRIL 14, 2009**

                    *     *     *     *




BEFORE THE HONORABLE JOHN W. BISSELL, SPECIAL MASTER

```
 1
 2
 3
 4            Transcript of proceedings in the above
 5   matter taken by Theresa O. Mastroianni, Certified
 6   Court Reporter, license number 30X100085700, and
 7   Notary Public of the State of New Jersey at the
 8   United States District Court House, One Gerry Plaza,
 9   Camden, New Jersey, 08102, commencing at 2:21 PM.
10
11
12
13
14
15
16
17
18            MASTROIANNI & FORMAROLI, INC.
19         Certified Court Reporting & Videoconferencing
20                 251 South White Horse Pike
21                  Audubon, New Jersey 08106
22                       856-546-1100
23
24
25
```

```
 1
 2  A P P E A R A N C E S:
 3
 4         LOUGHRY & LINDSAY, ESQUIRES.
            BY:  LAWRENCE W. LINDSAY, ESQUIRE
 5         330 MARKET STREET
            CAMDEN, NEW JERSEY 08102
 6         856-968-9201
            ATTORNEYS FOR THE PLAINTIFFS
 7
 8
            RODNEY D. RAY, ESQUIRE
 9         32 NORTH BLACK HORSE PIKE
            BLACKWOOD, NEW JERSEY  08012
10         856-232-3337
            856-232-4561
11         ATTORNEYS FOR THE PLAINTIFFS
12
13         ROSELLI & GRIEGEL, PC
            BY:  MARK ROSELLI, ESQUIRE
14              - and -
            BY:  JAMES LAZZARO, ESQUIRE
15         1337 STATE HIGHWAY 33
            HAMILTON SQUARE, NEW JERSEY  08690
16         609-586-2257
            ATTORNEYS FOR THE DEFENDANTS
17
18
19
20
21
22
23
24
25
```

1                    JUDGE BISSELL:  I'm now reopening
2     proceedings in the case of Michael Shontz, civil
3     action docket number 08-2946.
4                    This opinion/report is being issued
5     pursuant to the directives of the Order of Reference
6     to a Special Master and the Special Master's
7     Agreement and the guiding principles of law which
8     underlie this decision to be applied to the facts
9     upon which it is based as set forth in the jury
10    instructions in the Walker and Mejias jury charges to
11    the extent applicable to the allegations of
12    Mr. Shontz.
13                   As finalized after review under Local
14    Civil Rule 52.1, this transcript will constitute the
15    written report required under paragraph seven of the
16    Order of Reference to a Special Master.
17                   Michael Shontz was in Trailer Number
18    Three, C Wing on or about August 2, 1997, when he
19    alleges that certain events occurred to him.
20                   On page 15 he talks about the first
21    assaults upon him after having been strip searched,
22    reclothed and then moving off the unit for, as best I
23    can recall, the opportunity to have that unit
24    searched.
25                   The question then is asked beginning at

```
 1   line 15 on page 15:
 2              "Question:  All right.  What happened
 3   after that?
 4              "Answer:  He started walking down the
 5   wing, and I was punched in a stomach about three or
 6   four times.
 7              "Question:  By who?  By a guard, by an
 8   inmate?
 9              "Answer:  By guards.
10              "Question:  Now, were you inside or
11   outside of the trailer when that happened?
12              "Answer:  I was still on the wing."
13              Later on cross-examination it was
14   developed that although these events occurred, they
15   really did not inflict anything in the nature of a
16   serious injury, according to him.
17              At pages 19 and 20 he testifies to
18   another event, namely, upon his return to the trailer
19   from the gym, there not having been any incidents in
20   that passage of time.
21              Beginning at page 19 at line three:
22              "Question:  All right.  And did there
23   come a point when you were actually walking back into
24   the trailer that you had some kind of encounter with
25   another guard?
```

1          "Answer: I was walking in the trailer
2   and an officer was coming out the door and bumped
3   into my shoulder like he meant to hit me, and then he
4   grabbed me by the head and took me inside and smacked
5   my head up against the wall three times:
6          "Question: Now, when he grabbed you by
7   the head, did he actually get his hands on the bones
8   of your head, or was he grabbing your hair?
9          "Answer: He grabbed my hair."
10         There is a little bit of talk about the
11  length of his hair. And then questions continue on
12  page 20.
13         "Question: And when he struck your
14  head against an object, what was it, a wall, a door,
15  what was it?
16         "Answer: I believe it was a wall. He
17  just grabbed it and just kept hitting me up against
18  the wall, and told me watch where you're going next
19  time.
20         Further examination revealed an
21  assertion that this was happening on the right side
22  of his head.
23         On cross-examination, however,
24  Mr. Shontz was confronted with his deposition and his
25  version is very different. At his deposition taken

1   on March 31, 2000, obviously several years earlier
2   than his testimony here in court, he said he was
3   assaulted in this fashion on the way out to the gym,
4   not on his return from the gym.  He was very clear
5   about that in his deposition, but when confronted
6   with the discrepancy between his deposition and his
7   trial testimony, he then insisted that it still
8   happened on his way back from the gym.  He even went
9   so far as to assert that the deposition transcript
10  was inaccurate or might have been inaccurate in its
11  description.
12              He was then confronted with his answers
13  to interrogatories which were marked Exhibit D-344.
14  And in response to question four, which is in this
15  case (as with many others) the one which calls for a
16  description of the events of any assaults.
17              And among the segments of his answer to
18  question four, and I quote beginning at line 22 at
19  the bottom of page 67:  "And when I exited the wing
20  to the outside, the SOGs escorted me and had me walk
21  purposely head down into another SOG.  The SOG yelled
22  at me, grabbed me by the hair on the right side and
23  slammed the left side of my head into the exterior
24  wall of the trailer."
25              And then colloquy ensues on page 68 in

1  which he continues to assert that no, it happened on
2  the way back from the gym.  And the interrogatory
3  answers, although also under oath, are wrong.
4              The discrepancy is even heightened in
5  the interrogatory answers because apparently in
6  addition to being hit on the left side of the head
7  rather than the right, it now happened on the wall
8  outside of the trailer rather than on the inside, and
9  as I've already mentioned before, on his exiting the
10 trailer rather than his returning.
11             Given those significant discrepancies
12 in the evidence presented, it cannot be said,
13 frankly, that Mr. Shontz has established by a
14 preponderance of the evidence exactly what happened
15 to him on that occasion.  And I searched the rest of
16 this record to determine whether there were any other
17 indicia of credibility that would perhaps make this
18 sort of discrepancy not particularly significant.
19 You know, people's memories change, so forth and so
20 on. Frankly, I didn't find it.
21             Furthermore, we have his recounting of
22 the condition of his cell when he returned to the
23 cell after the search of the unit and after their
24 stay in the gym.  And he's asked at page 51 of his
25 transcript:

1           "All right.  Now describe for me what
2  your area looked like when you got back.
3           "Answer:  It looked like a bomb went
4  off, the whole wing.
5           "Question:  How about your cubicle?
6           "Answer:  Looked like a bomb went off.
7           "Question:  Describe it for me.
8           "Answer:  It was all messy, everything
9  was tore out of the lockers, all over the place.
10 Your stuff could be down there, his stuff could be
11 down there, your stuff wasn't in front of your place.
12 All of it out of the lockers and so forth.
13          This, however, is very effectively
14 refuted by the report of Ombudsman Silva, D-135,
15 which demonstrates, certainly to my satisfaction,
16 that the cells were not left in a totally trashed
17 condition.  Indeed, among the things that the
18 ombudsmen were there to do was to observe to make
19 sure that conduct of this sort did not take place.
20 As in some other cases, I want to reiterate here that
21 there is nothing that's come to my attention which
22 would indicate that one, more or all of the ombudsmen
23 assigned to this lockdown would have done anything
24 other than taken their job seriously and
25 conscientiously.  No indications that the ombudsmen,

1   either by themselves or in participation with others,
2   sought to whitewash the manner in which prisoners or
3   their property was treated.
4           Once again, the testimony with regard
5   to the so-called incident with the SOG officer at or
6   about the entrance of the unit, and the inability to
7   establish any credibility with regard to the
8   description of that event, also impacts him with
9   regard to his allocations of being punched in the
10  stomach on his way down the tier before exiting the
11  unit.  I think it's not too far fetched to indicate
12  that he was touched, he might have been prodded, he
13  might have been pushed for the purpose of making sure
14  that he moved expeditiously and also as a bit of a
15  demonstration of authority and control by the
16  officers involved.  But even the plaintiff indicates
17  that he wasn't injured by that alleged conduct in any
18  serious way.  And I find under all the circumstances
19  that that conduct also is not actionable as cruel and
20  unusual punishment.
21          Finally, although not every item of
22  evidence has been discussed in this opinion/report,
23  all evidence presented to the Special Master was
24  reviewed and considered.
25          For the reasons set forth above, I

1 recommend in this report that the district court
2 enter an order and judgment of no cause for action
3 with regard to Michael Shontz.
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

C E R T I F I C A T E

I, Theresa O. Mastroianni, a Notary Public and Certified Shorthand Reporter of the State of New Jersey, do hereby certify that the foregoing is a true and accurate transcript of the testimony as taken stenographically by and before me at the time, place, and on the date hereinbefore set forth.

I DO FURTHER CERTIFY that I am neither a relative nor employee nor attorney nor counsel of any of the parties to this action, and that I am neither a relative nor employee of such attorney or counsel, and that I am not financially interested in the action.

*JOMastroianni*

Theresa O. Mastroianni, C.S.R.
Notary Public, State of New Jersey
My Commission Expires May 5, 2010
Certificate No. XIO857
Date: April 16, 2009